**Allen RAYBURN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 17, 1971.

Sam F. Kibbey, George P. Stavros, Ashland, for appellant.

John B. Breckinridge, Atty. Gen., Richard E. Fitzpatrick, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Judge.

Allen Rayburn was indicted under KRS 433.120 and found guilty of burglarizing the dwelling house of Lee Irving. Pursuant to the jury's verdict he was sentenced to two (2) years in the penitentiary. The judgment provides that the sentence is to run consecutively with certain other sentences. RCr 11.04(1). Rayburn appeals, contending that the evidence was insufficient to support a burglary conviction and that the in-court identification of him by Irving and Mrs. Irving was based on an illegal line-up and should not have been admitted.

The Irvings lived in a small home in Ashland. Mrs. Irving was a student at the local community college and sometimes studied late at night. On the night of December 4 and 5, 1969, she finished her studies at about 1:00 A.M. and prepared to bathe before retiring. Her husband and small child had gone to bed some hours earlier and were asleep. While she was in the bathroom she heard heavy footsteps in the house. Having left the front door unlocked, she was at once fearful that an intruder had entered the home, because she had not heard her husband get up and the person making the noise in the house evidently was wearing heavy shoes. She remained transfixed for some moments until she heard the front door close and thought the intruder had departed, whereupon she put on her robe and ran to the bedroom. As she passed from bathroom to bedroom she saw a man sitting in the living room going through her purse. She awakened her husband, who rose immediately and fired a shot at the intruder as he went out the front door. Bills totalling $80 were missing from her purse, and $5 had been taken from a table. At the trial both Mr. and Mrs. Irving identified Rayburn as the man they had seen in the house on this occasion. Rayburn's defense was an alibi.

■ Mrs. Irving testified that there were two entrances to the house, being a front door and a back door, and that both doors and all the windows were closed when she retired to the bathroom. It is contended for Rayburn that there was no evidence of any physical force in gaining entry to the dwelling and that the case falls squarely under Taylor v. Commonwealth, Ky., 461 S.W.2d 568 (1971), in which a conviction for storehouse breaking was reversed because there was no proof of a breaking. However, in that case and in the earlier cases therein cited no witness was able to say whether the doors to the buildings in question were open or closed when they were entered. The opening of a closed or partially closed door is a "breaking." Collins v. Commonwealth, 146 Ky. 698, 143 S.W. 35, 36 (1912). Mrs. Irving's testimony was amply sufficient to justify the jury's finding that the door was opened by the intruder and that there was therefore a "breaking."

■ As we have indicated, both Mr. and Mrs. Irving pointed out Rayburn from the witness stand as the man they had seen

burglarizing their home. On cross-examination Mrs. Irving testified as follows:

"Q–37 You did see this defendant in June down at the City Police Station in Ashland?

A– That's right.

Q–38 And you are basing your identification of him today on the identity you made of him there then, aren't you?

A– That's right.

Q–39 That's the basis for you identifying him here today?

A– The basis for identifying him actually as seeing him in my house.

Q–40 Did you see him when Mr. Earl Borders took you down there, didn't Earl Borders take you down there?

A– No.

Q–41 Did Mr. Borders take you in the courtroom?

A– Yes, he did.

Q–42 And he described this individual to you before he took you in here, didn't he?

A– No, I picked him out of a picture, of ten or twelve pictures.

Q–43 You picked him out from pictures?

A– Yes.

Q–44 You didn't pick him out of eight or ten people?

A– No.

Q–45 It was from pictures?

A– Yes.

Q–46 Was that in your statement, about picking him out from pictures?

A– No.

Q–47 You already picked him before you went in the same day, you are saying now, that is what happened?

A– Yes, that did happen.

Q–48 But without those pictures and without seeing him down there that day—that enabled you to say he was the person that was in your house?

A– Not really.

Q–49 How much longer was this that you saw him down there at the police station?

A– Six months or so.

Q–50 Do you remember what other pictures they showed you? Did you know any of the other people they showed you?

A– No, I never saw them before."

Mr. Irving's testimony concerning the identification was as follows:

"Q–4 You did go to the police station in June, didn't you?

A– Yes.

Q–5 And you talked to Captain Earl Borders down there, didn't you?

A– Yes.

Q–6 You all went over and Mr. Borders described this man to you, didn't he?

A– No, he didn't. We described him to him.

Q–7 Now, your basis of identification of this man here in this courtroom is on what you saw down there at the police station that day? You didn't know him before?

A– No.

Q–8 You had never seen him before?

A– No."

So far as we are able to discover, there is nothing in the record to suggest that a line-up was conducted. We find no basis for the argument that the identification testimony was inadmissible or for considering whether it was tainted by an illegal line-up.

The judgment is affirmed.

All concur.